VESTRY OF EMMANUEL CHURCH v. SAFE DEPOSIT AND TRUST COMPANY, EXECUTOR AND TRUSTEE, ET AL.

HOME FOR INCURABLES *v.* SAME.

MARGARET BOLLING HENRY DONOHO *v.* SAME.

SCARRITT COLLEGE FOR CHRISTIAN WORKERS *v. SAME.*

[Nos. 8, 9, 10, 11, April Term, 1935]

*Decided May 23rd, 1935.*

The causes were argued before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, and JOHNSON, JJ.

*D. K. Este Fisher*, for the Vestry of Emmanuel Church, appellant.

*Frederick J. Singley*, submitting on brief, for the Home for Incurables, appellant.

*Vernon Cook*, for the Scarritt College of Christian Workers, appellant.

*Richard F. Cleveland*, with whom were *Semmes, Bowen & Semmes* on the brief, for Margaret Bolling Henry Donoho, appellant.

*Arthur W. Machen, Jr.*, for Mrs. Bowie W. Collins, and others, legatees under part IV of Mrs. Henry's will, appellees.

*J. Craig McLanahan*, with whom was *Kenneth C. Proctor* on the brief, for Eleanor Reifsnider Robins, appellee.

*John M. Butler* and *Venable, Baetjer & Howard*, submitting on brief, for the Safe Deposit and Trust Company of Baltimore, Trustee, appellee.

*John G. Schilpp, Joseph T. Brennan*, and *Brown & Brune*, submitting on brief, for Anna G. Lanier and

Audrey W. Davis, executrix of Mary C. Goldsborough, appellees.

*Edward D. Martin* and *Edward B. Lowndes,* submitting on brief, for Laura Lee Davidson, appellee.

*Thomas N. Copenhaver,* submitting on brief, for Nina Wilson and Trinity M. E. Church, South, appellees.

*D. Eugene Walsh,* submitting on brief, for John L. and Janet C. Reifsnider, appellees.

*James M. Munroe,* submitting on brief, for Mary Louise Reifsnider, appellee.

BOND, C. J., delivered the opinion of the Court.

A shrinking in the amount of property owned by a testatrix and property over which she had a power of testamentary appointment has made it impossible under existing conditions to satisfy the devises and bequests by her, and raised questions of relative position of the beneficiaries and the incidence of the loss. The Safe Deposit & Trust Company, trustee under the will which created the power and executor under the second will, has sought instructions from the court of equity, and the present appeals have been taken, by parties affected, from rulings in the decree.

Miss Mary Bowie Dulin, of Baltimore City, dying in 1917, left by her will property known as 200 and 202 East Pratt street in that city, and all the residue of her estate besides, to the Safe Deposit & Trust Company in trust to pay the income to her sister, Mrs. Louise D. Henry, during her life, gave Mrs. Henry a power of testamentary appointment over the remainder, and provided that property not disposed of by her under the power should be held in trust for the benefit of devisees and legatees specified by Miss Dulin herself, as follows:

First, she directed that the Pratt street property, if not disposed of by Mrs. Henry, should go to their cousin, Louise Reifsnider Creecy, her heirs and assigns, absolutely and free of the trust;

Second, out of the remaining property she provided that securities or property of $10,000 in value should be set apart and held in trust to pay the income to Margaret Bolling Henry (now Mrs. Donoho) until she should attain the age of 18 years, when she should receive the property absolutely, free of the trust. Mrs. Donoho attained that age before the death of Mrs. Henry.

Then out of any that might still remain, after Mrs. Donoho's portion should be so set apart or paid over, two portions, each of $10,000 in value, were to be set apart to pay the income from each to Virginia Davidson and Leila Way, respectively, during life, with remainders, free of the trusts, to specified religious corporations not concerned in this case. These last two trust funds were to abate together, pro rata, in case of an insufficiency of assets to pay them.

Mrs. Henry, dying 15 years later, in 1932, a widow without children or descendants, left a will divided into four main parts, with these in turn divided into numbered items or paragraphs. The first, without relevancy in the case, bequeathed property received from her husband's estate and kept distinct by his widow. The second part contained provisions with regard to the property of Miss Dulin, over which the testatrix had the power of appointment. With some corporate names abbreviated and figures only used for sums of money, the relevant items or paragraphs are these:

Part II.

"1. * * * In the exercise of the power so given to me I will and direct that after my death said Trustee shall pay and set apart out of the principal of the estate so held by it, in addition to the specific and pecuniary devises and legacies absolute and in trust which my sister's will directs be paid and set apart out of said trust fund, the following legacies and trust funds, viz:

"To Josephine Anderson, (my maid), $1,000.

"To Elting F. Riefsnider, $1,000.

"To the Home for the Aged and Orphans of the Bal-

timore Conference of the Methodist Episcopal Church, etc., $5,000.

"To the Safe Deposit and Trust Company of Baltimore the sum of $10,000 in trust to pay the net income therefrom to Leila Way during her life and upon her death the trust shall cease and the principal shall be paid over absolutely to my residuary legatees, viz.: Scarritt College, Vestry of Emmanuel Church, and the Home for Incurables of Baltimore City.

"To the Safe Deposit and Trust Company of Baltimore such sum as in its judgment is sufficient to produce a clear annual income of $1,200 in trust to pay, accounting from my death in equal monthly instalments, to my butler, James W. Nichols, during his life $900 per annum, and to my chauffeur, Nevitt Roberts, during his life $300 per annum, and upon the death of the first thereof to die to distribute so much of said trust fund as in its opinion it may deem proper, and upon the death of the survivor to distribute the whole of the trust fund then in its hands equally among my said residuary legatees." A codicil increased the butler's annuity to $1,200.

"2. Said Trustee shall also pay out of the principal of the residue of my sister's estate the inheritance taxes upon the legacies left by the preceding item and also the inheritance taxes upon the legacies and devises made by my said sister's Will after my death.

"3. The Residue of said trust fund held under my said sister's will after the satisfaction of the specific gifts and devises made therein effective after my death and the specific gifts thereof herein made, absolute and in trust, (the trust fund which would have been set aside for Miss Virginia Davidson had she survived being payable at my death to the remaindermen named therein) her residuary legatee having died some years ago, I give in equal shares to Scarritt College, Emmanuel Protestant Episcopal Church and the Home for Incurables of Baltimore City."

Part III relates to property not concerned in these appeals. Part IV disposes of the property of the testatrix

herself, as distinguished from any appointed property. It includes numerous legacies, none of which need be specified here, except items numbered 8 and 9, as follows:

"8. I give, devise and bequeath all of the rest, residue and remainder of my estate and all property and estate over which I have or may have any power of testamentary disposition except as herein specifically given or appointed, in equal shares to Scarritt College, Vestry of Emmanuel Protestant Episcopal Church, and the Home for Incurables of Baltimore City.

"9. I will and direct that any inheritance or succession taxes upon the legacies or devises given by the preceding items of this Will, or upon any beneficial interest therein, the payment of which is not hereinbefore provided for, shall be paid by my Executor out of my residuary estate, so that the respective legatees and devisees thereof will receive the said legacies and devises free of such tax."

The codicil to Mrs. Henry's will, executed December 10th, 1930, contains the following relevant provision:

"By Paragraph 3, Part 2, of my Will I give the residue of the estate of my sister, Mary Bowie Dulin, as therein set forth and I do now hereby further provide that should my own absolute estate which is disposed of by Part 4 of my Will be insufficient to pay the legacies therein and herein provided for then any deficiency therein shall be paid out of the estate of my said sister, Mary Bowie Dulin."

The first questions, in the order of argument, are those of the positions of the remainders in the trusts of the appointed property for the benefit of Leila Way, the butler, and the chauffeur during their lives. Does Mrs. Henry's provision that upon the death of Leila Way the trust shall cease, "and the principal shall be paid over absolutely to my residuary legatees, viz:" the three corporations, bequeath the principal to them as specific legatees, or does it mean that they shall take the principal only as part of the residuary estate, if, not being absorbed in the payment of general pecuniary legacies, the principal survives and forms part of that residuary estate?

And does the accompanying provision that, after the deaths of the butler or the chauffeur, or both, the trustees shall distribute a proper proportion or the whole of their trust fund, "equally among my said residuary legatees," bequeath the fund to the said legatees specifically, or only as part of the residuary estate if it survives payment of the other legacies? The two provisions are similar. In the first, the names of the three corporations are explanatory, identifying the residuary legatees, "viz: Scarritt College, etc." In the second, this is put in the ordinary manner of repetition: "My said residuary legatees." "It would be a strange interpretation of a will to give directly opposite constructions to the same words in two sentences standing in juxtaposition, and both relating to personalty, and when the second, in its concluding language, makes direct reference to the first." *Woodland v. Wallis*, 6 Md. 151, 167. *Miller, Construction of Wills*, sec. 25.

The lower court concluded that the funds were meant to fall into the residuary estate, and to come to the legatees, if at all, only after satisfaction of the other legacies. "The remainder will pass to the said institutions," the decree is, "in their capacities as residuary legatees of the residue of the appointed property under the will of Louise D. Henry, and consequently said residuary legatees can take no benefit therefrom unless and until all general pecuniary legacies payable out of the Estate of the said Mary Bowie Dulin, deceased. * * * including the legacies of the deficiencies of the legacies bequeathed in Part IV of the will of Louise D. Henry, deceased, have been paid in full, together with interest thereon as hereinafter specified, and the collateral inheritance tax thereon."

As the parties all agree, it is plain that the testatrix, Mrs. Henry, planned her gifts without contemplating the possibility of reduction in the amount of her sister's property over which she had the power of appointment, or at least without contemplating the possibility of its reduc-

tion below the point of sufficiency for payment of all legacies. On the contrary, in her confidence in its sufficiency, she provided in her codicil for an increase in the butler's annuity to be paid out of it, and for the payment from it of any deficiencies in her own property to pay legacies. Here, therefore, as often happens, the problem is to determine not exactly the intention of the testatrix with respect to a reduced fund, but her understanding or conceptions of the gifts made. The court is then to let the consequences follow from these. It is not within the court's province, of course, to work out a plan better suited to the changed circumstances or one that we think Mrs. Henry would have adopted if she had anticipated the losses, and then to accept that as intended by her. We must proceed from the opposite direction; from the expressions in the will, we must, if possible, find her conceptions of her gifts, and let those control. *West v. Sellmayer*, 150 Md. 478, 480, 133 A. 333. There are no legal rules to prevail over the intention here. And the rules or principles announced in cited decisions on other wills must be kept subordinate to the intention, however it may appear. *Miller, Construction of Wills*, sec. 16. "The chief impediment to the fulfilment of intention appears to be authority." *Ram, Exposition of Wills*, 267 (8 Law Lib.) ; *Board of Home Missions v. Lynch*, 168 Md. 117, 176 A. 619. The case, however, affords only slender clues at best.

We find no explicit direction either that these legacies in remainder be deferred to the payment of general pecuniary legacies, or on the other hand, that they stand on an equal footing with them. The direction to pay them over absolutely and free of the trust would be appropriate for ending the trust in either case, and seems to leave the problem unsolved. We take the naming of the residuary legatees in the first clause, as we have said, to be explanatory, identifying the residuary legatees, so that the effect is the same as if the gift had been merely "to my residuary legatees." Mrs. Henry, as appears in

the later clauses, had selected the three corporations as residuary legatees of both the appointed property and of her own distinct property, in substitution for the residuary legatee selected by Miss Dulin, but since deceased. If she intended that the property in remainder should come to them as parts of the residuary estate, still, the intervention of the two life interests would distinguish the gifts in remainder from the gift in the general residuary clause, and require separate references to her intention in the earlier clauses. And the repetition of their names in the first clause would seem to have been a natural result of her having substituted legatees of her own selection for the one named by Miss Dulin herself, and would not alone signify an intention to make them specific legatees.

The subsequent clause, disposing of the residue of appointed property generally, refers to the payment, first, of the specific gifts and devises previously made, but whether that includes among these specific gifts and devises the previous remainders to the residuary legatees depends upon the answer to the question at issue, whether Mrs. Henry meant the property to pass to the residuary legatees specifically, on an equality with pecuniary legatees named in other clauses, or to pass to them as parts of the residuary estate. We find no help in the evidence of Mrs. Henry's attendance at Emmanuel Church, and her continuation of ownership of the pew which her husband had held; nor do we think there is in the will any substantial indication of a preference of individuals over corporations named.

On the whole, avoiding repetition of further arguments, this court is of opinion that, in view of the facts that the. three corporations were the residuary legatees selected by Mrs. Henry for both the appointed property and her own, were omitted from among a large number of specific legatees elsewhere, and were described in these first clauses as residuary legatees, the lower court was justified in concluding that her reference in those clauses to her

residuary legatees indicated an intention that they should take, here as elsewhere, only from the residue after payment of specific legacies. The provision of the decree on this subject, contested in the appeals numbered 8, 9, and 11, is affirmed. The adoption of this conclusion renders it unnecessary to consider some other questions argued, because the parties to the appeals are without interest in the decision of them. These are questions of priority between the pecuniary legatees of the appointed property. The appellants, relegated to the residue of that property, would not be parties in interest. One such question is whether, when Mrs. Henry made gifts from the appointed property "in addition" to those of Miss Dulin which were adopted, the added gifts were placed on an equal footing with Miss Dulin's gift to Mrs. Donoho, preferred as it was in Miss Dulin's will, or subject to a priority in that gift. As all are preferred to the legatees of the residue, the latter would be unaffected by the decision. And Mrs. Donoho, of course, accepts the decision below.

A second such question is whether Mrs. Henry's direction in her codicil, that in case of a deficiency in her own estate to pay the legacies from it, they should be paid from the estate of Miss Dulin, amounts to gifts of general pecuniary legacies of so much from the Dulin estate on a parity with the other pecuniary legacies, or whether it amounts to gifts from the residue of that estate only. However they might be placed with relation to the previous legacies, all are prior in right to the three corporate legatees of the residue, and Mrs. Donoho, the only remaining appellant, does not contest the point.

The questions raised and argued in the briefs of the three corporate appellants do not include still other questions argued orally, and under Rule 39 of this court, need not be discussed. We have observed no error in the lower court's disposition of them.

Mrs. Donoho, on her appeal, contends that an allowance of interest on her legacy only from and after one

year from the death of Mrs. Henry, the regular beginning of interest on legacies paid by an executor, is erroneous because legacies of appointed property are payable upon the death of the donee of the power, and bear interest from the day they become payable. This is upon the theory that the gift of such appointed property takes its origin, not from the appointment in the will of the donee of the power, but from the will of the donor; that therefore it forms no part of the donee's estate, and is not distributed by her executor, but, at the termination of the intervening trust, is distributed by the trustee. Consistently with that theory the deferring of interest until one year after the death of the donee would not be according to the rule. It is only to meet the needs of administration that the time for payment is so deferred, and executors only have so much time to settle the estate administered upon. *White v. Donnell*, 3 Md. Ch. 526, 532; *Budd v. Garrison*, 45 Md. 418, 420; *Von der Horst v. Von der Horst*, 88 Md. 127, 130, 41 A. 124; *Graham v. Whitridge*, 99 Md. 248, 294, 57 A. 609, 58 A. 36, 66 L. R. A. 408; *Harrison v. Denny*, 113 Md. 509, 525, 77 A. 837. The theory of relation back to the gift of the donor has not been followed in the solution of all questions. *Darnall v. Connor*, 161 Md. 210, 213, 155 A. 894. As the cases previously cited show, it has not always been followed in awarding interest on gifts of appointed property. But there seems to be no dissent from the exclusion of the appointed property from the estate of the donee of the power, and from the executor's administration of that property, and with that exclusion conceded the only rule applicable, the general one that interest is to be allowed from the date when the legacy becomes payable, requires it to be paid from the date of the death of Mrs. Henry. It is the usual practice to allow such interest on property in remainder distributed by trustees. We see no ground for departing from that rule, and must consequently reverse the restriction of Mrs. Donoho's allowance. In the argument on this point, and in the decree, it has been

assumed that there was no income received on the securities or property to take the place of an allowance of interest, and this court decides the question as it was presented. *Ashton v. Wilkinson,* 53 N. J. Eq. 227, 30 A. 895, 35 A. 1130; *Loring v. Massachusetts Horticultural Society,* 171 Mass. 401, 50 N. E. 936.

The court below found and decreed that the clause in part II of Mrs. Henry's will which requires the trustee to pay out of the principal of the residue the inheritance taxes on the legacies appointed and adopted in that part could not be complied with at present because there was no residue. Mrs. Donoho, on her appeal, contends that a distinction should be made by giving her legacy a preference in payment of the taxes over all other legacies. The argument is that Miss Dulin intended Mrs. Donoho to be paid her legacy without deduction, and that under Mrs. Henry's will, by virtue of her adoption of Miss Dulin's dispositions, the taxes on Mrs. Donoho's legacy are still so to be paid before payment of those on legacies added by Mrs. Henry. It is sufficient to say that we see no sound reason for this distinction between the legacies adopted and those added, and we concur in the conclusion of the trial court.

*Decree affirmed in part and reversed in part, and cause remanded for a decree modified in accordance with this opinion, with costs to the appellees on all appeals.*